STATE of Missouri,
Plaintiff/Respondent,

v.

Sammie J. LOUIS,
Defendant/Appellant.

No. ED 80357.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 8, 2003.

Stacey F. Sullivan, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John Munson Morris, III, Joel A. Block, Asst. Attys. Gen., Jefferson City, MO, for respondent.

LAWRENCE E. MOONEY, Chief Judge.

The defendant, Sammie J. Louis, appeals the judgment entered after a jury convicted him of· the class D felony of operating a motor vehicle without a valid license in violation of section 302.020, RSMo 2000. He complains the prosecutor informed the jury that the trial judge endorsed the arresting officer's actions during a traffic stop. We affirm as modified.

The evidence adduced at trial, viewed in the light most favorable to the verdict, was as follows: Shortly after midnight, on December 18, 1999, Bruce Becker, a Missouri Highway State Patrol trooper, was patrolling Highway 79 in Elsberry, Missouri. As he drove north, he passed the defendant driving a car southbound. Trooper Becker noticed the car's license plate ended with a letter, instead of a number. Knowing this meant the license plate belonged to a pickup truck, instead of a car, he turned around and pulled the defendant over. Trooper Becker asked the defendant for his driver's license and proof of insurance. The defendant responded that he did not have a driver's license. After running a computer check that verified the defendant lacked a valid driver's license, Trooper Becker issued him a citation.

Prior to the subsequent trial, the defendant moved *in limine* to suppress Trooper Becker's testimony on the grounds that Trooper Becker violated his Fourth and Fifth Amendment rights. He argued

Trooper Becker lacked reasonable suspicion to perform a traffic stop and had pulled him over merely because he was African–American. He further argued Trooper Becker failed to read him his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before eliciting his admission that he did not have a license. The trial court, after hearing, denied the motion.

At trial, the defendant did not renew his objection to Trooper Becker's testimony. Instead, he argued to the jury that it could not consider Trooper Becker's testimony because Trooper Becker violated the defendant's rights by failing to *Mirandize* him and by pulling him over without reasonable suspicion and due solely to his race. After the defendant made this argument in both his opening statement and his cross-examination of Trooper Becker, the following exchange occurred during the State's re-direct examination:

Q. Trooper Becker, you were asked about questions about if you stop somebody for the color of their skin, that that's improper?

A. Yes, sir, I was.

Q. If you stop them without reasonable suspicion, that's improper?

A. Yes, sir.

Q. If your actions are improper and evidence should not be allowed in Court, who makes that decision?

A. The Judge does.

Q. In what type of hearing?

A. Motion to Suppress hearing—

The defendant then objected and the trial court sustained the objection. In closing argument, the prosecutor referred to this exchange, commenting that the judge decides what evidence the jury is allowed to hear and consider. Then, in his rebuttal argument, the prosecutor commented:

[L]ook on [the verdict director], and see where it tells you that you have to decide whether or not Trooper Becker was racially profiling [Defendant] on that date. Look at it and see do you have to decide whether or not the officer had reasonable suspicion to stop this vehicle. It's not on there because it's not your obligation ... If these issues were addressed in terms of if they were improper or if it was a reference to the Miranda Warnings were supposed to be given, do you think that you would have been able to hear the defendant's statement, that he said, "I don't have a license."

The jury found the defendant guilty of operating a motor vehicle without a valid license. Because the defendant had two prior convictions for the same offense, he stood convicted of a class D felony under section 302.020.3, RSMo 2000. The court also found he had a previous felony conviction for possession of a controlled substance and therefore sentenced him as a prior offender to four years' imprisonment. The court ordered the sentence to be served concurrently with sentences it imposed in three other cases in which the defendant pleaded guilty to possession of a controlled substance, felony passing bad checks, and three counts of forgery. The defendant appeals.

In his sole point relied on, the defendant argues the trial court plainly erred in permitting the prosecutor to inform the jury that the judge determined that Trooper Becker's actions during the traffic stop were legal and proper. The defendant contends that by citing judicial approval for Trooper Becker's actions, the prosecutor preempted the jury's fact-finding role and improperly vouched for the propriety of the traffic stop, which was the crux of his defense.

The defendant acknowledges our review is limited to the plain-error standard under Rule 30.20 because he failed to properly object to the evidence at trial and failed to raise this claim of trial court error in his motion for new trial. *State v. Hornbuckle,* 769 S.W.2d 89, 92 (Mo. banc 1989). Plain error is evident, obvious and clear error. *State v. Santillan,* 1 S.W.3d 572, 578 (Mo.App. E.D.1999). The assertion of plain error places a much greater burden on a defendant than when he asserts prejudicial error. *State v. Hunn,* 821 S.W.2d 866, 869 (Mo.App. E.D.1991). The defendant must show that the alleged error so substantially affects his or her rights that, if left uncorrected, manifest injustice or a miscarriage of justice inexorably results. *Hornbuckle,* 769 S.W.2d at 93. Plain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome determinative. *Deck v. State,* 68 S.W.3d 418, 427 (Mo. banc 2002).

We find the trial court did not commit error, plain or otherwise, because the prosecutor's questions and comments were proper. Where the defendant has injected an issue into the case, the State may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the injected issue. *State v. Lingar,* 726 S.W.2d 728, 734–735 (Mo. banc 1987). Similarly, while it is improper for a prosecutor in closing argument to refer to subject matter not in evidence, there is no reversible error if such references are in retaliation to the defendant's argument. *State v. Griffin,* 745 S.W.2d 183, 185 (Mo. App. E.D.1987).

Here, the defendant injected the issue of the propriety of Officer Becker's actions during the traffic stop. In both his opening statement and his cross-examination of Trooper Becker, he indicated that any evidence obtained as a result of the allegedly improper traffic stop was "moot," "irrelevant," and "could not be used against [him]." He then argued in closing,

> We need to send a message to the Police Department, to the Prosecuting Attorney's Office and tell, "If you don't have reasonable suspicion to pull [Defendant] over, then don't pull him over."

In making this argument, he was essentially asking the jury to acquit the defendant because Trooper Becker violated his rights. The prosecutor was merely responding to this plea for jury nullification when informing the jury that the judge decides what evidence the jury can hear and consider and when implying that the judge determined Trooper Becker's actions were proper. *See, State v. Rawlins,* 932 S.W.2d 449, 454 (Mo.App. W.D.1996) (defense counsel invited retaliation by urging the jury to acquit because of alleged improprieties by a state trooper). A defendant may not provoke a reply to his or her own argument and then claim error. *Id.*

Moreover, even if the prosecutor's questions and comments were improper, they did not have a decisive effect on the verdict. While the propriety of the traffic stop may have been the central focus of the defense, it was not "the ultimate question for the jury" as the defendant asserts. It was a question of law for the judge. *State v. Mendoza,* 75 S.W.3d 842, 845 (Mo. App. S.D.2002). In reality, the only factual question the jury was instructed to answer was whether the defendant operated a car knowing he lacked a valid license. The State adduced overwhelming evidence that the defendant committed each and every element of the charged crime. Further, the defendant concedes he lacked a valid license, which was not even contested at trial. Therefore, the trial court's acquiescence to the prosecutor's questions and comments did not result in prejudicial er-

ror, let alone manifest injustice or a miscarriage of justice.

Because the prosecutor's remarks implying that the judge approved of Trooper Becker's actions only affected a collateral issue, this case is distinguishable from the two "judicial endorsement" cases the defendant relies upon, *State v. Ross*, 667 S.W.2d 31 (Mo.App. E.D.1984) and *State v. Smith*, 626 S.W.2d 669 (Mo.App. E.D. 1981). In *Ross*, this court reversed the defendant's conviction because the prosecutor's closing argument implied a judicial endorsement of important evidence on the only real issue in the trial, the issue of identification. *Ross*, 667 S.W.2d at 33. In *Smith*, this court reversed the defendant's conviction because the prosecutor in effect told the jury that the court had already made the determination that the State had proven each and every element of the crime charged. *Smith*, 626 S.W.2d at 670. Unlike the case at hand, the prosecutor's remarks in those cases had a prejudicial effect upon the verdict. Point denied.

In the course of reviewing this case, however, we note that the both the oral pronouncement of sentence and the written judgment and sentence incorrectly reflect that the defendant was convicted of driving while revoked. Instead, the defendant was convicted of operating a motor vehicle without a valid license. Pursuant to Rule 30.23, we modify the written judgment and sentence to reflect that the defendant was convicted of operating a motor vehicle without a valid license.

The judgment, as modified, is affirmed.

GARY M. GAERTNER, SR., J., and LAWRENCE G. CRAHAN, J., concur.